UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
YARID JUAREZ-CARDOSO,                          :
                                               :
                        Plaintiff,             :
                                               :               **FINDINGS OF FACT AND**
-against-                                      :               **CONCLUSIONS OF LAW WITH**
                                               :               **MEMORANDUM AND ORDER**
LA FLOR DE SANTA INES, INC., LUISA             :
ZENTENO, and MARIO ZENTENO,                    :               15 Civ. 6671 (VMS)
                                               :
                        Defendants.            :
----------------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Yarid Juarez-Cardoso ("Ms. Juarez-Cardoso") commenced this action against

Defendants La Flor de Santa Ines, Inc. ("La Flor"); Luisa Zenteno ("Ms. Zenteno"); and Mario

Zenteno ("Mr. Zenteno") (collectively "Defendants"), alleging violations of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL"),

N.Y. Lab. Law § 650 et seq., as amended by the Wage Theft Prevention Act ("WTPA"), N.Y.

Lab. Law § 195.  See generally Complaint ("Compl."), ECF No. 1.  The Court held a bench trial

on October 28, 2016; November 30, 2016; and December 19, 2016, and now issues its findings

of fact and conclusions of law pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

52(a).  Having considered the evidence adduced at trial, the arguments of counsel, the Parties'

post-trial submissions, and the controlling law on the issues presented, the Court concludes that

1) Plaintiff's claims are time-barred under the FLSA; 2) Plaintiff has met her burden of proof on

some but not all of her claims arising under the NYLL; and 3) is entitled to $16,535.98 in

damages plus interest.  All of Plaintiff's other claims are denied.  Plaintiff's counsel may submit

a fee application within 14 days of the date of this Order.

1

## I.  BACKGROUND

On November 20, 2015, Plaintiff commenced this action seeking to recover, <u>inter alia</u>, unpaid overtime and minimum wages pursuant to the FLSA and NYLL, spread-of-hours premiums, liquidated damages, pre-judgment interest, post-judgment interest, statutory penalties for record-keeping violations and attorney's fees and costs.  Compl., ECF No. 1.

By her Complaint, Plaintiff alleged as follows:

Plaintiff was employed as a cook at La Flor from January 6, 2011 until October 2013.  <u>Id.</u> ¶ 14.  In 2011, she worked 12 hours a day, from 6 A.M. until 6 P.M.  <u>Id.</u> ¶¶ 18-19.  In 2012, she was scheduled to work 14 hours per day, from 6 A.M. until 8 P.M., six days a week.  <u>Id.</u> ¶¶ 20-21.  Nonetheless, she often worked until 10 P.M. for a total of 16 hours per day.  <u>Id.</u>  She did not have a regular schedule in 2013, but her weekly hours exceeded her previous hours.  <u>Id.</u> ¶ 22.  She was paid $420 per week.  <u>Id.</u> ¶ 25.  When Plaintiff worked more than her scheduled hours, she was paid $10 per extra hour.  <u>Id.</u> ¶ 26.  Defendants did not provide her with the notices required by N.Y. Lab. Law § 195, including proper paystubs under N.Y. Lab. Law § 195(3) ("Wage Statement") and a written notice and acknowledgment of her pay rate under § 195(1) ("Wage Notice").  <u>Id.</u> ¶¶ 27, 48.  Defendants failed to pay her a spread-of-hours premium for shifts when Plaintiff's workday lasted longer than ten hours.  <u>Id.</u> ¶¶ 28, 52.

Defendants answered the Complaint on December 23, 2015, and filed an amended Answer on January 20, 2016, specifically denying all of the substantive allegations of the Complaint and instituting five affirmative defenses, including a statute-of-limitations defense to Plaintiff's FLSA claims.  <u>See</u> Amended Answer ("Amend. Ans.") ECF No. 15.

The Parties completed discovery in May 2016, and they consented to jurisdiction by this Court on June 10, 2016.  <u>See</u> ECF Nos. 21-25.

The Court held a bench trial on October 28, 2016, which continued on November 30, 2016 and December 19, 2016.  See ECF Nos. 36, 41-42.  Plaintiff testified on her own behalf at trial and did not offer any additional witnesses.  See Transcript of October 28, 2016 Bench Trial ("Oct. Tr."), ECF No. 36; Transcript of November 30, 2016 Bench Trial ("Nov. Tr."), ECF No. 41.  Defendants offered testimony from Defendant Ms. Zenteno and Plaintiff's former employer, Brigido Martinez at Picnic Food Corp.  See Nov. Tr.; Transcript of December 19, 2016 Bench Trial ("Dec. Tr."), ECF No. 42.  After listening to the substance of Mr. Martinez's testimony, this Court concluded that it was inadmissible pursuant to Fed. R. Civ. 608 and excluded same.  See Nov. Tr. 136:11-166:7; Dec. Tr. 65:21-24.  Plaintiff offered copies of Defendants' pleadings and Ms. Zenteno's April 18, 2016 deposition transcript which were admitted into evidence.  Defendants offered copies of Plaintiff's pleadings, Plaintiff's paper discovery responses, the text message conversations between Plaintiff, Mr. Ordaz and Mr. Reyes, and Plaintiff's April 7, 2016 deposition transcript which were admitted into evidence.

Following the bench trial, the Parties submitted their proposed findings of fact and conclusions of law.  See Plaintiff's Motion for Damages ("Pl. Supp. Br."), ECF No. 53; Defendants' Post-Trial Submission ("Defs. Supp. Br."), ECF No. 43.  Plaintiff did not request Wage Notice penalties, attorney's fees or costs in her post-trial submission.  See Pl. Supp. Br., ECF No. 53.

## II.    JURISDICTION

This Court has original jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331.  See 29 U.S.C. § 216(b) (creating a civil right of action for violation of the FLSA).  It also may exercise supplemental jurisdiction over the NYLL and common law claims pursuant to 28 U.S.C. § 1367.

3

### III.      TESTIMONY AT TRIAL

The following is a summary of the relevant testimony:

### A.      Plaintiff's Testimony

Plaintiff testified that La Flor is a store, restaurant and bread distributor.  Oct. Tr. 21:8-11.  She began working for Mr. Zenteno and Ms. Zenteno at La Flor on January 6, 2009, and remained in their employment until October 2013.  Oct. Tr. 21:4-5, 23:6-16, 40:13-14.  She worked as a cook, preparing sandwiches and meals; waited tables; and cleaned.  Id. at 21:12-17, 23:15-23.

According to Plaintiff, Ms. Zenteno was in charge of hiring and firing people at La Flor and personally hired Plaintiff.  Id. at 26:6-25, 43:16-24.  Ms. Zenteno also paid Plaintiff and supervised her schedule.  Id. at 44:23-45:6.  Plaintiff testified that Mr. Zenteno did not have the authority to hire people, but that she considered him to be her boss because she received orders from him.  Id. at 44:12-19, 46:7-23.

Plaintiff claimed that from January 2009 until April 2013, she worked six days per week, from 6 A.M. to 6 P.M., and she was paid a salary of $420 per week for the hours worked within that schedule.  Id. at 27:15-29:18, 31:10-12, 24-25; Nov. Tr. 90:2-6.  Plaintiff acknowledged that she agreed to this schedule and salary.

> Q.      When did you first find out how much you would get paid?
> A.      Around January 20, 2009.
> Q.      How did you come to find out on January 20th how you were getting paid?
> A.      When she asked me if I was available to work from six a.m. to six p.m.
> Q.      So when she asked you that that's when you found out how much you were getting paid?
> A.      She told me that my salary would be 420 per week.
> Q.      And did you agree to that?
> A.      Yes

Oct. Tr. 27:17-28:4.  Plaintiff testified that a sign with the minimum-wage requirements was not

4

posted at La Flor.  Id. at 126:18-21, 131:6-17.  Although there was a clock in the kitchen at La Flor, there was no system for the employees to record the hours they worked.  Id. at 41:4-10.  Plaintiff did not keep personal records of the time that her shift started and ended.  Id. at 41:11-13.

Plaintiff testified that she regularly worked "extra" hours after her shift ended at 6 P.M., for which she was paid $10 for each extra hour.  Id. 31:5-19, 56:18-21.  She was paid for these "extra" hours on the day she actually worked them.  Id. at 31:13-23.  Plaintiff testified that she worked approximately nine to ten "extra" hours per week, but did not specify in which months or years.  Id. at 99:17-19.  Plaintiff worked the same amount of extra hours in 2010 and 2011, but the extra hours increased in 2012.  Id. at 40:24-41:3.  Plaintiff only took one week off for the entirety of her employment, in September 2013.  Id. at 34:13-23.

In April 2013, Plaintiff's hours were reduced to 6 A.M. to 2 P.M., six days a week due to an injury she sustained while working at La Flor.  Id. at 38:24-40:1, 77:20-25; Plaintiff's April 7, 2016 Deposition ("Pl. Dep."), Def.'s Exh. 6, ECF No. 52, 18:7-19:8.  Ms. Zenteno informed Plaintiff she would pay her $250 per week for this reduced schedule, from which Ms. Zenteno would deduct around $30 for taxes, for an approximate total of $220 a week.  Oct. Tr. 40:2-11.

> Q.    Well, actually we know that you were told Ms. Zenteno back in 2013 that
>        you would be making approximately $7 an hour if you wanted to keep
>        working there, right?
> A.    Yes, that's correct.
> Q.    And when she said that you weren't going to have the same schedule any
>        longer that meant that you weren't going to work extra hours anymore at all,
>        right?
> A.    That's correct.
> Q.    And by definition that means you would no longer be receiving $10 an hour
>        for extra time, correct?
> A.    Ms. Luisa and I reached an agreement that she was only going to give me
>        $250.
> Q.    You reached an agreement because she told you she was no longer going to
>        be paying for extra hours, correct?

A.  Well, I don't remember if those were the exact words but she told me that the schedule was different.

Q.  Well, she had actually removed you from a previous position where you were making extra hours, correct?

A.  Yes, that's correct.

Q.  And by definition you were going back to the initial schedule and you were going to be paid $7 an hour for work, correct?

A.  Well, I don't recall, but we reached an agreement and it was that I was going to receive $250 per week.
    . . .

Q.  You weren't going to be receiving $10 an hour for extra time any longer, correct?

A.  Yes, yes, that's correct.

Nov. Tr. 20:4-21:8.  Plaintiff claimed she was paid this amount from April 2013 until she resigned in October 2013.  Oct Tr. 40:12-14.  Plaintiff was impeached with her deposition testimony on this point; she previously testified that her schedule changed to 7 A.M. to 2 P.M. in April 2013.  Nov. Tr. 42:9-43:23.

In addition to the money she received for her work hours, approximately once every two months, Plaintiff was paid extra money when La Flor received a large order for a party.  Plaintiff testified that she was paid $10 per platter of food she prepared and that she prepared the platters during her normal work hours.  Oct. Tr. 37:1-15, 37:22-38:5.  Plaintiff could not recall how many platters she typically was asked to prepare because the number would change.  Id. at 38:9-18.

Plaintiff also sometimes worked as a waitress for which she occasionally received tips.  Id. 23:17-18; 120:2-6.

Plaintiff did not receive any additional payments from Defendants.  Nov. Tr. 38:19-23.  Plaintiff was paid in cash, and she was never provided with a statement detailing the cash she received.  Id. at 42:17-43:3.

Plaintiff testified that she has only a second-grade education, that her math is extremely

6

poor, and that she cannot read or speak English.  Id. at 22:5-11, 16-23, 54:21-23.  Plaintiff repeatedly relied on these factors to justify her lack of memory and her inability to estimate the number of hours she worked or the amount she was paid.

During her cross-examination, Plaintiff was evasive, feigned confusion, gave inconsistent testimony and was impeached directly with prior testimony on several points.  For example, when asked whether she could count U.S. currency, Plaintiff stated that she could only say she was paid $420 per week.  Id. at 54:24-55:2.  She then admitted that she could count American money, but "[n]ot a large amount."  Id. at 55:3-7.  Plaintiff subsequently testified that she could count U.S. currency to a little past 420, then admitted that she could count up to 620.  Id. at 55:8-11, 119:3-15.  When questioned regarding whether she would have trouble reading the currency amount $7.25, Plaintiff stated that she "may have a problem counting cents."  Id. at 119:24-120:1.  Plaintiff then claimed that she did not recall whether customers ever left tips in coins during the entire time she worked as a waitress.  Id. at 120:4-9.  When presented with a quarter, Plaintiff claimed she did not know how many cents it was worth.  Id. at 122:18-23.  Plaintiff testified that her husband told her that four quarters make a dollar, but she still could not say how many pennies were in a quarter.  Id. at 122:24-125:2.  During the testimony about currency, Plaintiff was particularly evasive, avoiding eye contact with counsel and the Court.

Plaintiff first testified at trial that she made $250 per week when her schedule was reduced in April 2013, id. at 40:2-11.  She then was impeached with testimony from her deposition wherein she stated that from April 16, 2013 until October 2013 she was paid $300 per week.  Id. at 59:6-62:24.  Plaintiff testified that she had stated that at her deposition because she did not remember the correct amount at that time.  Id. at 62:21-24.

Plaintiff also testified that she never learned the hourly rate she was being paid while she

7

worked at La Flor and that she was not aware of the statutory minimum wage, but then admitted that Ms. Zenteno informed Plaintiff that she would pay her $7.25 when she changed her schedule in 2013.

> A.     Yes, because of the time that Ms. Zenteno changed my schedule she told me that she was going to pay me $7.25 per hour.
>         . . .
> Q.     Ms. Juarez-Cardoso, you were paid a minimum of $10 an hour for all the extra time you worked; correct?
> A.     I'll try to explain how she paid me. My hours were from six a.m. to six p.m. If I worked two hours after six p.m. she would pay me $20.
> Q.     Ms. Juarez-Cardoso, you received $10 an hour for all -- for each hour of extra time that you worked; correct?
> A.     Yes, after my standard quitting time that was six p.m. she paid me $10 per hour.

Id. at 55:19-56:6.

Plaintiff gave conflicting and confusing testimony when presented with the Complaint in this case. Paragraph 22 of the Complaint states that Plaintiff did not have a regular schedule in 2013, but that her "weekly hours exceeded the hours she previously worked." Compl., ECF No. 1 ¶ 22.

Plaintiff initially testified that Paragraph 22 of the Complaint was incorrect, because Plaintiff worked fewer hours in 2013 than in 2012. Nov. Tr. 33:17-34:15. Plaintiff then clarified that she did, in fact, work more hours in 2013, but in the time period preceding April. Id. at 34:13-35:3. She claimed that she knew she worked more hours in 2013, prior to April, because in 2013, she left at 11 P.M., while in 2012 she left at 10 P.M. Id. at 41:6-16. At subsequent points during her cross-examination, Plaintiff testified that in 2013, prior to April, she (1) recalled working 16 hours a day, id. at 78:15-19; (2) worked 14 hours a day frequently, id. at 80:3-8; (3) worked until 9 P.M., Tuesday through Friday, id. at 80:13-21; and (4) did not recall

which specific days she stayed until 10 P.M.  Id. at 80:25-81:5, 81:10-82:2.[1]

Plaintiff also testified on cross-examination that: (1) she did not recall how many times she worked until 10 P.M. in 2011, id. at 82:6-14; (2) she could not recall how many times in she worked until 9 P.M. in 2011, id. at. 83:17-25; (3) she left at either 8 P.M. or 9 P.M. in 2012, id. at 74:5-23; (4) she could not recall how many times in 2012 that she worked until 9 P.M. but she believes it was "several times," id. at 82:15-83:13; (5) she could not state how many hours she worked per day in 2012, id. at 74:24-25:1; (6) that she never counted the hours, and that she could only say that she worked "many hours," id. at 75:2-16; (7) she could not recall how often she worked 15 hours in a day, and could not recall the specific year in which she worked 15 hours per day, id. at 77:3-5, 77:21-78:2; (8) she did not know the number of hours she worked at La Flor, but only remembered her schedule, Oct. Tr. 97:21-98:15; and (9) that she never counted her hours, but she knew how many days she worked.  Nov. Tr. at 92:23-93:3.  Plaintiff testified that regardless of the amount of "extra" hours she worked, Ms. Zenteno paid her $10 for each hour of "extra" time, and she paid her on the day that she worked the "extra" time.  Id. at 87:8-17, 88:19-22.  In giving this testimony, Plaintiff responded with hesitation, which gave the impression that she was searching her mind for the "right" answer, in contrast to the other

---

[1]     Defendants attempted to impeach Plaintiff with a complaint filed on her behalf in Francisco Mendoza, et al. v. Picnic Food, Corp., et al., No. 15 Civ.1805 (CLP) (E.D.N.Y.). Paragraphs 33 through 37 of the Complaint in the Mendoza action, which was admitted into evidence as Defendants' Exhibit 2, states that Plaintiff worked 66 hours per week for Picnic for the time period of February 2013 through December 2013.  See Def's Exh. 2, ECF No. 48 ¶¶ 33-37.  Plaintiff testified at trial that the Mendoza complaint was read to her through an interpreter and that the interpreter must have made an error because Plaintiff did not work at Picnic Foods during that time period.  See Oct. Tr. 78:8-17, 82:21-84:7, 86:5-12; Nov. Tr. 27:9-25, 29:15-17. Although this evidence could affect the Court's view of Plaintiff's credibility, the Court finds that it is too ambiguous to draw a conclusion as to what hours Plaintiff worked at Picnic Foods or at La Flor.

portions of Plaintiff's testimony, which were somewhat fluid.

This testimony greatly conflicted with her deposition testimony, the transcript of which was admitted into evidence.  Plaintiff conceded that at her deposition, she testified that she "was working a lot, up to 50 hours," but at trial, she explained that she testified as to that number because she does not know how to count.  Id. at 92:5-21.

Plaintiff also testified that she had contacted two of her former co-workers, Armondo Ordaz and Jesus Reyes, by text message in order to discuss her work hours.  Oct Tr. 71:25-72:11, 73:7-74:12; Nov. Tr. 45:19-46:12.  On March 9, 2015, Plaintiff sent a message to Mr. Ordaz that read: ". . . can you tell me my hours that I had with mother,[2] please?"  Nov. Tr. 55:16-24.  Plaintiff also sent a text message to Mr. Reyes that read: "Well, one question.  Do you remember at what time I came in to work? Six.  But I do not remember the hours when I left."  Id. at 57:17-25.

Plaintiff testified that she remembered that her schedule was 6 A.M. to 6 P.M. in 2012 as a result of her text message conversations with Mr. Ordaz and Mr. Reyes.  Id. at 62:22-63:2.  Plaintiff was impeached on this point.  When asked whether her hours were from 6 A.M. to 2 P.M. for a portion of 2012, she stated that she did not recall.  Id. at 63:6-8.  Plaintiff was then impeached with her deposition testimony wherein she stated that there "wasn't a schedule for a lot of the months" in 2012, and that Ms. Zenteno "changed [Plaintiff's schedule] from 6:00 to 2:00 but sometimes [she] left much later."  Id. at 63:9-64:15.  Plaintiff then admitted that she stated at her deposition that she worked from 6:00 A.M. to 2:00 P.M. for more than a month but less than half a year in 2012.  Id. at 68:2-21.

---

[2]     Plaintiff referred to Ms. Zenteno as "mother."  Nov. Tr. 102:14-22.

10

At trial, Plaintiff denied that she contacted Mr. Ordaz in order to ascertain her hours based on his memory.  Id. at 46:13-47:6, 47:18-21.  Plaintiff was then impeached with her deposition testimony on this point, and she admitted that she had testified at her deposition that she discussed her work hours with Armando "[b]ecause [she] wanted to know how many hours [she] put in in a day."  Id. at 47:22-48:3.  When asked whether this was because Plaintiff did not know her hours herself, Plaintiff testified that she "had an idea but since they worked there for years they could know better than me."  Id. at 48:4-9.

Plaintiff gave inconsistent testimony regarding the amount she was paid at certain times.  For example, Plaintiff testified at one point that she was often paid $600 weekly, including overtime.  Id. at 93:11-12.  Plaintiff then testified that she was rarely paid $600 week.  Id. at 94:7-8, 99:10-13.  Plaintiff then testified she never made $620 per week, id. at 99:14-18, at which time she was impeached by her deposition testimony, where she had testified that "sometimes [her] pay was $600, sometimes up to $620."  Id. at 99:19-100:11.

### B.        Defendant Luisa Zenteno's Testimony

Defendants Mario Zenteno and Luisa Zenteno are married to one another and are co-owners of La Flor.  Dec. Tr. 7:17-20.  Ms. Zenteno has a 6th grade education and went to school in Mexico.  Id. at 7:25-8:4.  She knows how to read and write in Spanish, but she does not know how to read, write or speak in English.  Id. at 8:5-9:14.  Ms. Zenteno has owned La Flor de Santa Ines for 15 years.  Id. at 8:17-9:1.

La Flor is a store which sells bread, groceries, such as canned beans and chiles, and some food.  Id. at 9:11-14.  Most of the foods that La Flor sells are Latin American goods, as they cater to a Latin American community.  Id. at 9:18-25.  Defendants typically employ between two and four employees; at the time of the trial, only Mr. Zenteno, Ms. Zenteno and a baker work at La

Flor.  Id. at 10:1-5.  The store hours, which were the same in 2011 and 2012, are from 7:00 A.M.
to 10:00 P.M.  Id. at 10:2-12.  Ms. Zenteno typically works the entire time the store is open,
seven days a week, while Mr. Zenteno takes a break in the afternoon.  Id. at 10:13-19.  The
couple live in the same building as La Flor.  Id. at 10:20-11:2.

Ms. Zenteno testified that she and Mr. Zenteno, as the owners of La Flor, have the
authority to hire and fire employees, to determine how much to pay employees, to schedule
employees and to control what employees do at La Flor.  Id. at 47:15-48:18.  In practice, though,
Ms. Zenteno handles the scheduling and paying of the employees exclusively, while Mr. Zenteno
assists by performing various tasks, including cleaning, going to the bank, and purchasing some
of the goods.  Id. at 11:3-17.

Ms. Zenteno testified that she met Plaintiff in January 2010.  Id. at 15:10-11, 30:14-16.
Ms. Zenteno testified that she was sure of this fact because in January 2009, her business was
located at a different address, and she moved her business September 2009.  Id. at 30:14-31:2.

At Ms. Zenteno's deposition, she testified that Plaintiff worked from 6 A.M. to 2 P.M. for
the duration of her employment.  See Defendant Luisa Zenteno's April 18, 2016 Deposition
("Zenteno Dep."), Pl's Exh. C, ECF No. 46, at 30:8-17.  Ms. Zenteno testified that she paid
Plaintiff $290[3] to cover her first 40 hours, and $130 for her overtime hours.  Id. at 10:14-11:7.
Plaintiff's regular pay was $420.  Id. at 11:23-12:3.

Ms. Zenteno testified at trial that she and Plaintiff initially agreed that Plaintiff would
work from 7 A.M. to 6 P.M. six days a week.  Dec. Tr. 15:20-24.  Plaintiff maintained this

---

[3]       The Court notes that Defendants assert in their post-trial submission that "La Flor Payroll
detailed reports show that Plaintiff's weekly wage was $290.00."  See Defs. Supp. Br., ECF No.
43, p.1 n.1.  The Court does not consider these records because they are not in the trial record
before the Court.

schedule in 2010 and 2011.  Id. at 16:24-17:2, 28:22-29:2.  Plaintiff stayed after 6 P.M. to help clean once or twice per week during these years.  Id. at 33:3-11.  There were occasions where Plaintiff worked until 9 P.M., 10 P.M., and even 11 P.M.  Id. at 33:2-34:2, 39:20-24.

In terms of the method of payment, Ms. Zenteno paid Plaintiff for her "regular" hours, or the first 40 hours she worked, in cash each Saturday.  Id. at 19:11-17, 20:17-21.  With respect to "extra" hours, Ms. Zenteno paid Plaintiff $10 for each hour worked on the day that Plaintiff worked those hours.  Id. at 16:22-23, 18:5-19:10.  Ms. Zenteno testified that she occasionally would receive a large food order for a party, and that she paid Plaintiff $10 extra for each tray of food she prepared.  Id. at 20:24-21:6, 32:20-33:2.

In the middle of 2012, Plaintiff began working five days a week, from 6 A.M. until 2 P.M.  Id. at 17:3-9, 28:16-18.  Plaintiff still worked "extra" hours, and there were occasions when Plaintiff worked until 10 P.M.  Id. at 28:16-21, 39-2-4.

In 2013, Plaintiff continued to work from 6 A.M. until 2 P.M.,[4] but she rarely worked "extra" hours due to her hand injury.  Id. at 17:24-25.  Plaintiff stopped working for Ms. Zenteno in September or October of 2013 because Ms. Zenteno hired a new cook and Plaintiff did not want to work as the cook's assistant.  Id. at 17:19-23, 23:9-17.

Ms. Zenteno testified that she paid Plaintiff $7.25 per "regular" hour for the first 40 hours Plaintiff worked, and $10 per each hour that Plaintiff worked over 40 hours.  Id. at 16:2-14.  Ms. Zenteno stated that she paid Plaintiff at her "regular" rate for the first five days per week, and $10 per hour Plaintiff worked over that.  Id. at 28:22-29:5.  Ms. Zenteno testified that the maximum she believes Plaintiff made in a week was either $620 or $650.  Id. at 21:15-22.

---

[4]     Ms. Zenteno's testimony was inconsistent on this point, as she also testified that Plaintiff worked from 7 A.M. to 2 P.M. in 2013.  Dec. Tr. 28:6-15.

Ms. Zenteno admitted that she did not keep written time records of Plaintiff's hours, did not keep records of how much she paid Plaintiff, and did not provide Plaintiff with a written pay notice.  Id. at 21:25-22:2, 22:18-22, 31:3-32:1, 40:3-23.  Ms. Zenteno also admitted that she did not pay Plaintiff a spread-of-hours premium,[5] and she did not take steps to ensure that her compensation practices complied with state and federal law.  Id. at 40-24-42:3.  Ms. Zenteno testified that she had a sign posted in her business regarding the minimum wage, which had been posted since 2011.  Id. at 13:18-14:6.  The signed was taped to the door and visible in the kitchen.  Id. at 13:21-14:14.

As a general matter, the Court found Ms. Zenteno to be a credible witness.  Her testimony was generally consistent.  She provided explanations for her answers that were based on factual details that Plaintiff did not contest, and her demeanor in the courtroom was calm and engaged with the Court and Counsel.

### C.      The Court's Findings of Fact

Fed. R. Civ. P. 52(a) provides, in relevant part, that a court conducting a bench trial "must find the facts specially and state its conclusions of law separately," and that "[j]udgment must be entered under Rule 58."  Fed. R. Civ. P. 52(a)(1).  Rule 52(a) further provides that such "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."  Fed. R. Civ. P. 52(a)(6).  Part of the role of the trial court in creating a finding of fact is determining how much weight to afford any given witness's testimony, and

---

[5]      Ms. Zenteno was not familiar with this term, but she agreed that she did not pay Plaintiff anything "extra" when Plaintiff's workdays spanned a period lasting longer than ten hours.  Id. at 40:24-41:15.

whether or not witnesses are credible.  See Krist v. Kolombos Rest., Inc., 688 F.3d 89, 95 (2d Cir. 2012) (in a bench trial, "[i]t is within the province of the district court as the trier of fact to decide whose testimony should be credited"); Newman v. Herbst, No. 09 Civ. 4313 (TLM), 2011 U.S. Dist. LEXIS 15525, at *1 (E.D.N.Y. Feb. 15, 2011) ("In any bench trial, the trial judge has to evaluate the credibility of the witnesses that testify, the witnesses' demeanor, any previous inconsistent statements by a witness, as well as the witness's explanation for any such inconsistent statements.").  If a plaintiff's testimony is found to be inconsistent with corresponding facts submitted to the court or is otherwise not credible, a court must resolve the inconsistencies in favor of the defendant.  See Diaz v. AJE Mgmt. Corp., No. 15 Civ. 1602 (AT) (JCF), 2017 U.S. Dist. LEXIS 4324, at *3 (S.D.N.Y. Jan. 10, 2017), adopted by No. 15 Civ. 1602 (TPG) (JCF), 2017 U.S. Dist. LEXIS 25766 (S.D.N.Y. Feb. 23, 2017); Coulibaly v. Millennium Super Car Wash, Inc., No. 12 Civ. 04760 (CBA) (CLP), 2013 U.S. Dist. LEXIS 161860, at *7 (E.D.N.Y. Nov. 13, 2013).

The following section constitutes the Court's findings of fact pursuant to Fed. R. Civ. P. 52(a)(1).  These findings of fact are drawn from witness testimony at trial and the Parties' trial exhibits.  At the outset, the Court in assessing the credibility of the witnesses, finds the testimony of Defendant Louisa Zenteno to have been more credible than the testimony of the Plaintiff.  See, e.g., Chao v. Vidtape, Inc., 196 F. Supp. 2d 281, 290 (E.D.N.Y. 2002), aff'd as modified, 66 F. App'x 261 (2d Cir. 2003).

1.  Plaintiff's Start and End Dates

The Court finds that Plaintiff began working for Defendants on January 1, 2010. Although Plaintiff testified that she began working for Defendants on January 6, 2009, Oct. Tr. 23:6-11, the Court credits Ms. Zenteno's testimony that Plaintiff started work at La Flor in

January 2010, because La Flor was located at a different address in January 2009.  <u>See</u> Dec. Tr. 15:10-11, 30:14-31:2.  The Court finds that the Parties do not dispute that Plaintiff's employment ended in October 2013.  <u>See</u> Oct. Tr. 23:12-14; Dec. Tr. 17:19-23.

a.   Plaintiff's Scheduled Hours

The Court finds that Plaintiff worked a regular schedule of 6 A.M. to 6 P.M., six days per week, from January 2010 through June 30, 2012, for a total of 72 scheduled hours.  Plaintiff testified that she did not take breaks during the day, Oct. Tr. 36:4-12, which Ms. Zenteno did not rebut.  Indeed, at trial Ms. Zenteno admitted that Plaintiff worked at least from 7 A.M. to 6 P.M. Dec. Tr. 15:20-24, 16:24-17:2, 28:22-29:2.  As Ms. Zenteno did not put forth evidence rebutting Plaintiff's testimony that she started work at 6 A.M. each day, the Court credits Plaintiff's testimony which, except for one hour a day, is the same as her employer's testimony.

The Court further finds that Plaintiff's schedule changed from 6 A.M. to 2 P.M. on July 1, 2012.  Ms. Zenteno testified that in the middle of 2012, Plaintiff began working five days per week, from 6 A.M. until 2 P.M.  Dec. Tr. 17:3-9, 28:16-18.  In contrast to her previous testimony regarding the years 2010 and 2011, Plaintiff gave inconsistent testimony regarding her schedule in 2012.  Plaintiff testified at one point that she remembered that her schedule was 6 A.M. to 6 P.M. in 2012 based on her text message conversations with Mr. Ordaz and Mr. Reyes.  Nov. Tr. 62:22-63:2.  When further questioned as to whether her hours were from 6 A.M. to 2 P.M. for a portion of 2012, she stated that she did not recall.  <u>Id.</u> at 63:6-8.  Plaintiff was then impeached with her deposition testimony wherein she stated that there "wasn't a schedule for a lot of the months" in 2012, and that Ms. Zenteno "changed [Plaintiff's schedule] from 6:00 to 2:00 but sometimes [she] left much later."  <u>Id.</u> at 63:9-64:15.  Plaintiff later admitted that she stated at her deposition that she worked from 6:00 A.M. to 2:00 P.M. for more than a month but less than half

a year in 2012.  Id. at 68:2-21.  Because neither party testified as to the exact date Plaintiff's schedule changed in 2012, the Court chooses as the date on which Plaintiff's hours were reduced a reasonable mid-point of July 1, 2012.

The Court finds that from July 1, 2012 until October 2013, Plaintiff worked from 6 A.M. to 2 P.M., five days a week for a total of 40 hours per week.  The Parties agreed to this point at trial.[6]  Oct. Tr. 38:24-40:1, 77:20-25; Pl. Dep. at 18:7-19:8; Dec. Tr. 17:24-25.

> b.  Plaintiff's Regular Pay

The Court finds that Plaintiff was paid an hourly wage of $7.25 per hour for the first 40 hours of work.  The Court further finds that Plaintiff was paid $10 per hour for all hours beyond 40 that she worked.

Thus, for the period of January 2010 through June 30, 2012, Plaintiff was paid $7.25 per hour from 6 A.M. to 2 P.M. then $10 per hour from 2 P.M. to 6 P.M., Monday through Saturday based on Defendant's testimony, Dec. Tr. 33:2-34:2, 39:20-24, which the Court found to be credible as noted above, and Plaintiff's failure to present credible evidence as to her pay during this period.

The Court further finds that the Plaintiff was paid $7.25 per hour from 6 A.M. to 2 P.M., Monday through Friday, for the period of July 1, 2013 through October 1, 2013, based on Ms. Zenteno's testimony, Zenteno Dep. at 10:14-17; Dec. Tr. 16:12-14, and Plaintiff's failure to provide consistent testimony on her pay during this period.[7]  As noted above, the discussion of

---

[6]  The Court notes that Plaintiff and Ms. Zenteno both previously testified that Plaintiff's hours changed to 7 A.M. to 2 P.M. in April 2013.  See Nov. Tr. 42:9-43:23; Dec. Tr. 28:6-15.

[7]  Plaintiff testified at her deposition that she was paid approximately $300 per week after her schedule was reduced.  Pl. Dep. 86:15-21.  At trial, Plaintiff contradicted that testimony and stated that she was paid $250 per week after her schedule was reduced.  Oct. Tr. 59:6-62:24, 40:2-11; Nov. Tr. 20:4-21:8.  The Court credits Plaintiff's earlier deposition testimony as being

$7.25 per hour was a point in the trial at which Plaintiff's testimony was especially incredible.

        c.  Plaintiff's "Extra" Hours

The Court concludes that Plaintiff worked 32 "extra" hours per week, from 2 P.M. to 6 P.M., Monday through Saturday from January 2010 until June 30, 2012, for which she was paid $10 per each "extra" hour.  Oct. Tr. 31:5-19, 56:18-21, 99:12-19.

The Court further finds that Plaintiff worked approximately ten "extra" hours per week after her regular shift ended at 2 P.M. from July 1, 2012 to April 16, 2013.[8]  Ms. Zenteno conceded that Plaintiff stayed one to two hours after 2 P.M. in 2013, Dec. Tr. 18:1-7, and sometimes until 9 P.M., 10 P.M. and 11 P.M.  Id. at 33:2-34:2, 39:2-24.

Plaintiff's testimony regarding the number of "extra" hours she worked was inconsistent and lacked any details that could help the Court make a finding as to the number of "extra" hours she worked.  She testified that she did not know the number of hours she worked at La Flor and that she never counted her hours, but she only remembered her schedule.  Nov. Tr. 92:23-93:3; Oct. Tr. 97:21-98:15.  After persistent examination by counsel, Plaintiff eventually estimated that she worked approximately nine to ten "extra" hours per week, but did not specify to which year that approximation pertained.  Oct. Tr. 99:17-19.  Plaintiff testified that the "extra" hours she

_____

more credible because when Plaintiff testified about her hourly wage, or her wages at trial, she looked down at her hands rather than at the questioner and fidgeted on the witness stand.  This behavior led the Court to believe that Plaintiff was reluctant in providing her answers and was not being forthcoming.  In addition, the deposition testimony is closer to Ms. Zenteno's testimony that she paid Plaintiff $290 per week for 40 hours of scheduled work at $7.25 per hour.

[8]      The Court sets April 16, 2013 as the date Plaintiff stopped working "extra" hours based on Plaintiff's testimony that on April 16, 2013, her hours at La Flor were reduced due to an injury, Oct. Tr. 77:20-25, and Ms. Zenteno's testimony that Plaintiff was no longer working overtime after she was injured, Dec. Tr. 39:12-14.

worked increased in 2012.  Id. at 40:24-41:3.

     Plaintiff's approximation became further muddled when broken down by year.  Plaintiff testified that she did not recall how many times she worked until 9 P.M. or 10 P.M. in 2011, and that she left at either 8 P.M. or 9 P.M. in 2012.  Nov. Tr. 74:5-23, 82:6-14, 83:17-25.  Plaintiff testified that she could not state how many hours she worked per day in 2012 and could not specify the number of times she worked until 9 P.M. beyond it being "several times."  Id. at 74:24-75:1, 82:15-83:13.

     Plaintiff testified that in 2013, prior to April, she worked 14 hours a day frequently; recalled working 16 hours a day; could not recall how often she worked 15 hours in a day; worked until 9 P.M. from Tuesday through Friday (which would total 15 hours); and did not recall which specific days she stayed until 10 P.M.  Id. at 77:3-5, 77:21-78:2, 78:15-19, 80:3-8, 80:13-21, 80:25-81:5, 81:10-82:2.  At another point during the trial, Plaintiff testified that she worked more hours in 2013, prior to April, because in 2013 she left at 11 P.M., while in 2012 she left at 10 P.M.  Id. at 34:13-35:3, 41:6-16.

     Plaintiff's testimony as to her "extra" hours was too imprecise for the Court to make a finding of fact that she regularly worked beyond the ten hours about which she and Ms. Zenteno both testified.  Oct. Tr. 99:17-19; Dec. Tr. 18:1-7, 33:2-34:2, 39:2-24.  Based on Plaintiff's inconsistent testimony, and Ms. Zenteno's concession that Plaintiff worked until approximately 9 P.M. to 11 P.M. twice a week until April 2013, the Court concludes that Plaintiff worked approximately ten "extra" hours per week from July 1, 2012 to April 16, 2013, for which she was compensated $10 per hour for each "extra" hour.

d.   Defendants' Roles at La Flor

The Court finds that both Ms. Zenteno and Mr. Zenteno exercised control over the terms and conditions of Plaintiff's employment in that they each had the power, during all relevant periods, to: (1) hire and fire employees; (2) determine rates and methods of pay; (3) determine the number of hours an employee worked or alter their schedules; and (4) supervise and control work of the employees.   Oct. Tr.  43:16-24, 44:23-45:6, 46:7-23; Dec. Tr. 47:15-48:18.

## IV.   CONCLUSIONS OF LAW

### A.   Statute of Limitations

As a threshold issue, it is necessary to determine the applicable statutory limitations period for Plaintiff's unpaid overtime and minimum wage claims brought pursuant to the FLSA as Defendants assert it as a defense in their amended answer.  Amend. Ans. ECF No. 15 at p. 7. See Eschmann v. White Plains Crane Serv., Inc., No. 11 Civ. 5881 (KAM) (VVP), 2014 WL 1224247, at *4 (E.D.N.Y. Mar. 24, 2014).

The FLSA normally provides for two-year statute of limitations on actions to enforce its provisions, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  "Courts have held that for the purposes of establishing the statute of limitations under the FLSA, a new cause of action accrues with each payday following an allegedly unlawful pay period."  Callari v. Blackman Plumbing Supply, Inc., 988 F. Supp. 2d 261, 277 (E.D.N.Y. 2013) (quoting Lee v. ABC Carpet & Home, 236 F.R.D. 193, 199 (S.D.N.Y. 2006)).  The standard for determining willful behavior, for which plaintiff bears the burden of proof, Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 141 (2d Cir. 1999), is "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  McLaughlin v. Richland Shoe Co., 486 U.S.

128, 133, 108 S.Ct. 1677 (1988).  "To show that a FLSA violation is willful, an employee must prove that the employer was more than negligent."  Saunders v. City of New York, 594 F. Supp. 2d 346, 358 (S.D.N.Y. 2008).  "Reckless disregard" is "the failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]." 5 C.F.R. § 551.104.  An employer's "good-faith but incorrect assumption" is by itself insufficient to demonstrate an employer's willfulness. McLaughlin, 486 U.S. at 128.  Moreover, if an employer "acts unreasonably, but not recklessly, in determining its legal obligation," the employer's violation should not be considered willful. McLaughlin, 486 U.S. at 135 n.13.  "All that is required is that the employer knew or had reason to know that it was or might have been subject to the FLSA."  Donovan v. Kaszycki & Sons Contractors, Inc., 599 F. Supp. 860, 870 (S.D.N.Y. 1984).

District courts in this Circuit have generally found willfulness where there is no real dispute that the employer had been on notice that it was subject to the FLSA.  See, e.g., Brock v. Superior Care, Inc., 840 F.2d 1054, 1062 (2d Cir.1988) (defendant's violations were willful where it was on actual notice of FLSA requirements due to earlier violations); Donovan, 599 F. Supp. at 870 (defendants found to have acted willfully where they already complied with FLSA obligations for union employees); Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 87 (E.D.N.Y.2012) (finding three-year statute of limitations applied where defendant admitted that it was "aware of the FLSA minimum wage and overtime requirements" during plaintiff's employment); Cox v. Town of Poughkeepsie, 209 F.Supp.2d 319, 328 (S.D.N.Y. 2002) (defendants willfully violated FLSA where attorney sent town attorney letter stating that FLSA was being violated by town's practice).

Here, Plaintiff has not presented evidence showing that Defendants were on notice that they were subject to the FLSA, and thus has failed to meet her burden to show willfullness.

21

Eschmann, 2014 WL 1224247, at *6.  As a result, the Court finds that the two-year statute of limitations applies under the FLSA.[9]  See Colella v. City of New York, 986 F. Supp. 2d 320, 337 (S.D.N.Y. 2013) ("Accordingly, because [p]laintiffs have failed to produce evidence of willfulness, the two year statute of limitations applies.")  Moreover, as noted above, Defendants legally complied with the FLSA except that Plaintiff's overtime rate should have been slightly higher.

As the Complaint was filed on November 20, 2015, see Docket No. 1, and the Court has found that Plaintiff was employed by Defendants from January 2010 through April 2013, Plaintiff's FLSA claims must have accrued on or after November 20, 2013.  As a result, they fall outside the two-year statute of limitations periods.

By contrast, the NYLL establishes a six-year limitations period.  See N.Y. Lab. Law §§ 198(3), 663(3); Man Wei Shiu v. New Peking Taste Inc., 11 Civ. 1175 (NGG) (RLM), 2014 WL 652355, at *10 (E.D.N.Y. Feb. 19, 2014).  Therefore, Plaintiff may recover under the NYLL for claims arising outside of the FLSA's two-year limitations period.  See Pinzon v. Paul Lent Mech. Sys. Inc., 11 Civ. 3384 (DRH) (WDW), 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012), adopted by 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012).[10]

**B.      Legal Standard**

To establish a claim for minimum or overtime compensation under the NYLL, Plaintiff must prove that she was an "employee" and that Defendants were "employers" as defined by

---

[9] Defendants attempted to offer evidence that there were wage notice signs posted at the business, but Plaintiff moved to exclude the evidence, which was granted.  Dec. Tr. at 13:18-14:6, 66:3-11.

[10] Given the age of the case, and having conducted the bench trial, the Court will exercise its discretion to decide the State law claims rather than to dismiss the case for lack of jurisdiction. See 28 U.S.C. § 1367.

New York law.  See N.Y. Lab. Law § 650 et seq.; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2.  An employee under the NYLL is "any individual employed or permitted to work by an employer in any occupation . . ." N.Y. Lab. Law § 651(5).  The NYLL's definition of an employer reaches "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer."  N.Y. Lab. Law § 651(6).  The New York common law test for who constitutes an employer for the purposes of the NYLL "focuses more on 'the degree of control exercised by the purported employer'" over the purported employee, "as opposed to the 'economic reality of the situation.'"  Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 34 (E.D.N.Y. 2015) (quoting Hart v. Ricks Cabaret Intl., Inc., 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)).

Unlike the FLSA, the NYLL "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of annual sales, it otherwise mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime, including the minimum wage during the relevant period."  Chun Jie Yin v. Kim, No. 07 Civ. 1236 (DLI) (JO), 2008 WL 906736, at *4 (E.D.N.Y. Apr. 1, 2008); see N.Y. Lab. Law § 652 (minimum hourly wage); N.Y. Comp. Codes R. & Regs. tit. 12 § 142–2.1(a)(1) (same); id. § 142–2.2 (same methods as employed in the FLSA for calculating overtime wages).  As a result, courts in this Circuit have generally applied an FLSA analysis to a plaintiff's NYLL claims.  See Kleitman v. MSCK Mayain Olam Habba Inc., No. 11 Civ. 2817, 2013 WL 4495671, at *3 (E.D.N.Y. Aug. 20, 2013) (citations omitted).

The NYLL expressly provides that employees are entitled to recover all unpaid wages. See N.Y. Lab. Law § 198(3); Jowers v. DME Interactive Holdings, Inc., No. 00 Civ. 4753, 2006 WL 1408671, at *9 (S.D.N.Y. May 22, 2006).

The NYLL also contains a "spread-of-hours" provision which allows a plaintiff who is paid minimum wage to recover an extra hour's worth of pay at the minimum wage for each day that an employee works in excess of ten hours.  N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4.

In addition, Plaintiff may seek damages under the WTPA for Defendants' failure to provide a Wage Notice and weekly Wage Statements regarding, inter alia, her rate of pay and overtime rate. The WTPA amended the NYLL to provide that an employee who is not provided a Wage Notice and Wage Statement for each work week is entitled to statutory damages.  N.Y. Lab. Law §§ 198(1-b), 198(1-d), 195(1)(a), 195(3).

Accordingly, the NYLL, requires that employers pay employees at least minimum wage, overtime at a rate of one and one-half times employee's regular rate for work performed in excess of 40 hours a week and, where applicable, spread-of-hours pay and penalties for Wage Notice and Wage Statement violations.  See D'Arpa v. Runway Towing Corp., No. 12 Civ. 1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013).

### C.      Burden of Proof

Plaintiff must prove by a preponderance of the evidence that Defendants did not adequately compensate her as an employee as required by applicable law. See Solis v. SCA Rest. Corp., 938 F. Supp. 2d 380, 391-92 (E.D.N.Y. 2013).  Under the NYLL, an employer must maintain accurate records of an employee's hours worked and wages paid.  See N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.6.  When an employer has "inaccurate or inadequate" records, a plaintiff has carried out her burden if she proves that she "has in fact performed work for which [s]he was improperly compensated and if she produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded by statute on other grounds, 29 U.S.C. § 252.

The employee's "burden 'is not high,' so 'it is possible for a plaintiff to meet this burden through estimates based on [her] own recollection.'" Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011) (citations omitted).  There must be, however, "at least some credible evidence that plaintiff performed" the allegedly uncompensated work.  Daniels v. 1710 Realty LLC, 497 Fed. App'x 137, 139 (2d Cir. 2012).  Applying this standard the Court of Appeals has held that where there is testimony that plaintiffs "usually worked certain hours . . . [it] was only speculation to establish what hours these plaintiffs worked and [they] did not present sufficient evidence for the jury to make a reasonable inference as to the number of hours worked." See Grochowski v. Phoenix Constr., 318 F.3d 80, 88-89 (2d Cir. 2003) (internal quotation marks omitted).

Once an employee satisfies her burden, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Anderson, 328 U.S. at 687-88.  Courts may award damages approximating the loss to the employee where the employer does not provide such evidence. Id. at 688.

The NYLL mirrors the FLSA with regard to the burden of proof where an employer has failed to keep proper employment records. See N.Y. Lab. Law § 196-a (where an employer fails "to keep adequate records . . . the employer in violation shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements"); Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 332 (S.D.N.Y. 2005).  As Defendants here did not make, keep, and preserve records of Plaintiff's wages and conditions of employment, Plaintiff may rely on her recollection alone to meet her initial burden of proving that Defendants violated the statute. Doo Nam Yang, 427 F. Supp. 2d at 335 (citing N.Y. Lab. L. § 196-a); Anderson, 328

25

U.S. 680 at 687.[11]  Under this burden-shifting framework, Defendants can then "present evidence either of the precise wages paid or evidence to 'negative the reasonableness of the inference to be drawn from the employee's evidence.'"  Doo Nam Yang, 427 F. Supp. 2d at 332.

### D.      Liability for Violations of the NYLL

The NYLL defines an "employer" as "any person . . . employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as employer." N.Y. Lab. Law §§ 190(3), 651(6). The definition of "employed" under the NYLL is that a person is "permitted or suffered to work." Id. § 2(7).

1.   Plaintiff is an employee under the NYLL

The evidence sufficiently demonstrates that Plaintiff was an employee within the meaning of Sections 2 and 651 of the NYLL.  Plaintiff's status as an employee was not contested by Defendants. Dec. Tr. 15:15-20; 23:24-25; 24:1.

2.   Defendants Luisa Zenteno and Mario Zenteno are individually liable as Plaintiff's employers under the NYLL

Although Defendants did not argue or present evidence at trial suggesting they were not Plaintiff's employers, it is plain that under the NYLL they were.

The Second Circuit has noted that the question of whether "the tests for 'employer' status are the same under the FLSA and the NYLL . . . has not been answered by the New York Court of Appeals," and did not decide this issue.  Sethi v. Narod, 974 F. Supp. 2d 162, 188-89 (E.D.N.Y. 2013) (quoting Irizarry v. Catsimatidis, 722 F.3d 99, 116 (2d Cir. 2013)).  District

---

[11] "Although this burden-shifting framework was developed in [Anderson] to facilitate an employee-plaintiff's presentation of the "amount and extent" of work performed, considering the interrelatedness of work and wages, this Court sees no reason why this standard should not also be applied to an employee-plaintiff's presentation of evidence with regard to wages received." Doo Nam Yang, 427 F. Supp. 2d at n.2 (citing Anderson, 328 U.S. at 687).

courts in this Circuit "have interpreted the definition of 'employer' under the New York Labor

Law coextensively with the definition used by the FLSA." Spicer v. Pier Sixty LLC, 269 F.R.D.

321, 335 n.13 (S.D.N.Y. 2010) (quoting Jiao v. Shi Ya Chen, No. 03 Civ. 0165, 2007 WL

4944767, at *9 n.12 (S.D.N.Y. Mar. 30, 2007) (interpreting the definition of "employer" under

the NYLL coextensively with the definition used by the FLSA because there is "general support

for giving FLSA and the New York Labor Law consistent interpretations" (citation & internal

quotation marks omitted)); see Hart, 967 F. Supp. 2d at 940 (noting that "[c]ourts in this District

have regularly applied the same tests to determine, under the FLSA and the NYLL, whether

entities were joint employers" because "[t]he statutory standard for employer status under the

NYLL is nearly identical to that of the FLSA" and that while "the New York Court of Appeals

has not yet resolved whether the NYLL's standard for employer status is coextensive with the

FLSA's," "there is no case law to the contrary" (citations omitted)); Chen v. St. Beat Sportswear,

Inc., 364 F. Supp. 2d 269, 278 (E.D.N.Y. 2005) ("Courts hold that the New York Labor Law

embodies the same standards for joint employment as the FLSA." (citation omitted)); Topo v.

Dhir, No. 01 Civ. 10881, 2004 WL 527051, at *3 (S.D.N.Y. Mar. 16, 2004) (noting that there is

"general support for giving FLSA and the New York Labor Law consistent interpretations");

Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003)

("[B]ecause New York Labor Law and the FLSA embody similar standards . . . I will consider

the federal law in deciding whether defendants were joint employers."); Lopez v. Silverman, 14

F. Supp. 2d 405, 411 n.4 (S.D.N.Y. 1998) (considering federal law only as to question of joint

employment under federal and New York law).

  Under federal law, whether someone is an employer is analyzed using the "economic

reality test", which requires consideration of four factors: "whether the alleged employer (1) had

the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984). "No one of the four factors standing alone is dispositive," and "the overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case." Id. (internal citation omitted); see also Irizarry, 722 F.3d at 103–05; Rosas v. Alice's Tea Cup, LLC, 127 F. Supp. 3d 4, 13 (S.D.N.Y. 2015); Moon v. Kwon, 248 F. Supp. 2d 201, 236-7 (S.D.N.Y.2002).

 "One way in which the NYLL's definitions are nearly identical to the FLSA's definitions, and not identical, is that the New York common law test for who constitutes an employer for the purposes of the NYLL focuses more on the degree of control exercised by the purported employer over the purported employee, as opposed to the economic reality of the situation." Fermin, 93 F. Supp. 3d at 34 (citations & internal quotation marks omitted). "Factors relevant to assessing control include whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." Bynog v. Cipriani Grp., Inc., 1 N.Y. 3d 193, 198, 802 N.E. 2d 1090, 1092-93 (N.Y. 2003) (internal citations omitted).

The Court finds that Plaintiff has presented sufficient evidence to meet the elements of both the "economic reality test" and the Bynog factors for both Ms. Zenteno and Mr. Zenteno. Under the "economic reality test", Plaintiff has shown that (1) Ms. Zenteno was in charge of hiring and firing people at La Flor and personally hired Plaintiff, id. at 26:6-25, 43:16-24; (2) Ms. Zenteno supervised Plaintiff's schedule and (3) paid her. Id. at 44:23-45:6. To the extent that Defendants did not keep employment records, the fourth factor of the "economic reality test"

28

does not apply. Plaintiff further showed that Mr. Zenteno did not have the authority to hire people, but that she considered him to be her boss because she received orders from him. Id. at 46:7-23. Under the Bynog factors, Plaintiff has shown that (1) she did not work at her own convenience insofar as she had to arrive at La Flor at a specific time to begin her shift, Oct. Tr. ¶¶ 18-19, 20-21, 27:15-29:18, 31:10-12, 24-25; Nov. Tr. 90:2-6; (2) there was no evidence presented that showed that she engaged in other employment while working at La Flor; (3) she did not receive any fringe benefits, id. at 38:19-23, (4) she was paid by Defendants, Oct. Tr. 44:23-45:6; and (5) she was on a fixed schedule for her regular hours, id. ¶¶ 18-19, 20-21, 27:15-29:18, 31:10-12, 24-25; Nov. Tr. 90:2-6.

Ms. Zenteno's testimony further supports a finding that she and Mr. Zenteno are joint employers. Ms. Zenteno testified that she and Mr. Zenteno are married to one another, and that they are co-owners of La Flor. Dec. Tr. 7:17-20. Ms. Zenteno typically works the entire time the store is open, seven days a week, while Mr. Zenteno takes a break in the afternoon. Id. at 10:13-19. According to Ms. Zenteno, they both have the authority to hire and fire employees, to determine how much to pay employees, to schedule employees and to control what employees do at La Flor. Id. at 47:15-48:18. Although Ms. Zenteno usually handles the scheduling and paying of the employees exclusively, Mr. Zenteno assists by cleaning, going to the bank, and purchasing some of the goods. Id. at 11:3-17.

Based on the testimony of both Plaintiff and Ms. Zenteno, the Court finds that Ms. Zenteno and Mr. Zenteno are both employers under the "economic reality test" and the Bynog factors and, as a result, they are jointly and severally liable as employers of Plaintiff.

3.   Plaintiff earned a minimum wage

Plaintiff was entitled to be paid the statutory minimum wage.  N.Y.C.R.R. § 143-1.3. The statutory minimum wage in New York between January 1, 2007 and December 30, 2013 was $7.15 per hour.  N.Y. Labor Law § 652(1).  Thus, between January 2010 and October 2013, Plaintiff was entitled to a minimum wage of $7.15 per hour.

Both Plaintiff and Ms. Zenteno agree that Plaintiff was paid $7.25 per hour after her hours were reduced (from July 1, 2012 through October 2013).  Oct Tr. 55:19-56:6; Dec. Tr. 16:2-14.  Plaintiff, however insists she was paid a weekly salary of $420 per week before her hours were reduced (from January 2010 through June 30, 2012), Oct. Tr. 27:15-29:18, 31:10-12, 24-25; Nov. Tr. 90:2-6, while Ms. Zenteno contends that Plaintiff was paid $7.25 an hour during that period as well and was paid as much as "$620 or $650" per week, Dec. Tr. 16:2-14; 21:15-22.

In her supplemental brief, Plaintiff argues that as an employee in the hospitality industry, she was improperly paid on a weekly basis instead of an hourly basis as is required by the New York State Minimum Wage Order effective January 1, 2011.  N.Y. Comp. Codes R. & Regs. tit. 12 § 146-2.50.  Despite Plaintiff's argument and her repeated insistence at trial that she was paid a weekly salary, the Court finds that Plaintiff was paid an hourly wage throughout her employment, based on the Court's credibility findings.

Only Plaintiff and Ms. Zenteno testified as to Plaintiff's employment at La Flor.  The Court had the opportunity to observe the witnesses, consider testimony and determine that Ms. Zeneno's testimony should be credited over Plaintiff's on these issues.  These conclusions are stated above in the findings of fact.  Supra at p. 14-20.

Although Plaintiff's burden is minimal, she must present at least some credible evidence of her wages.  As discussed above, the Court finds that her testimony was too indefinite and contradictory, and her demeanor when testifying too evasive on this issue to be credible.  See Daniels, 497 F. App'x 137 at 139.  As a result, the Court "must resolve the inconsistencies in favor of the defendant."  See Diaz, at *3.

As discussed above, the Court found Plaintiff to be incredible on her wage rate and hours above her regular hours.  Her demeanor, multiple contradictory statements, inability to remember any details about her hours and general vagueness weighed against her credibility.  As noted above, supra at p. 5-7, 9-10, 14, she not only was impeached by her deposition testimony at trial, but she contradicted herself at trial and even contradicted her own Complaint.  Her explanations for her contradictions and difficulties remembering any details about her hours or wages included, limited education, poor understanding of mathematics, and incorrect interpreter translations.

For example, Plaintiff made an exhaustive attempt to show that she did not know the value of a quarter in an attempt to prove she was not paid an hourly wage of $7.25.  It strains credulity to believe that a person who was sophisticated enough to file and follow through with a Worker's Compensation claim, to consider the owners' offer to purchase and run La Flor, and to initiate two litigations for allegedly unpaid wages, does not know the monetary value of a quarter.  Her lack of recall of any specifics about when and how often she worked "extra" hours was incredible.  Her "lack of credibility on th[ese] issue[s] casts considerable doubt on the balance of h[er] testimony."  Doo Nam Yang, 427 F. Supp. 2d at 333.  Ms. Zenteno, on the other hand, provided testimony that was much more consistent and served to "negative the reasonableness of the inference to be drawn from the employee's evidence."  Anderson, 328 U.S.

31

at 687-88.  Ms. Zenteno was particularly credible because she admitted those violations of the NYLL which she had committed namely, paying Plaintiff $10 per hour for "extra" time (rather than $10.875) and not having prepared or retained paper records.

Accordingly, the Court finds that Plaintiff's regular hourly wage was $7.25 per hour for the first 40 hours of work for the entire period she was employed by Defendants. Oct Tr. 55:19-56:6.

4. Plaintiff was entitled to additional overtime compensation

The NYLL requires employers to compensate employees "at a premium rate, based on the particular employee's "regular rate," for hours worked in excess of 40 per week." Doo Nam Yang, 427 F. Supp. 2d at 338 (citing N.Y. Comp. Codes R. & Regs. tit. 12 § 138-2.2 (incorporating the FLSA definition of overtime into the NYLL (employers must pay nonresidential employees "at a wage rate of 1 ½ times the employee's regular rate for hours worked in excess of" 40))).

One and a half times Plaintiff's regular hourly rate of pay of $7.25 per hour is $10.875 per hour.  Accordingly, Plaintiff is entitled to be $10.875 per hour for any hours she worked in excess of 40 per week for the period of January 2010 to April 16, 2013.

5. Defendants are liable for wage notice and wage statement violations

Plaintiff seeks to recover damages for Defendants' alleged failure to provide Plaintiff with written Wage Notices and Wage Statements pursuant to N.Y. Lab. Law §§ 195 and 198. Compl., ECF No. 1 ¶¶ 27, 48.  The NYLL requires that employers maintain records for their employees who fall under the NYLL's wage protections.  See N.Y. Lab. Law §§ 195, 661; 12 NYCRR § 142-2.6 (specifying content of employer's records).  Employers must provide employees with "a notice containing . . . the rate or rates of pay and basis thereof, whether paid

by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances . . . ."  N.Y. Lab. Law § 195(1)(a).  New York law also requires that employees be furnished "a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."  N.Y. Lab. Law § 195(3).

Defendants do not dispute Plaintiff's allegations that she was never provided with a written Wage Notice and Wage Statement, and that they failed to keep and preserve accurate payroll records.  Dec. Tr. 21:25-22:2, 22:18-22, 31:3-32:1, 40:3-23.  The Court therefore finds that Plaintiff is entitled to recover damages for Defendants' Wage Notice violations under the NYLL in the amount of "fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars," N.Y. Lab. Law § 195(1)(a), 198(1-b), and Wage Statement violations in the amount of "two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars."  N.Y. Lab. Law §§ 195(3), 198(1-d); see Herrera v. Tri-State Kitchen & Bath, Inc., No. 14 Civ. 1695 (ARR) (MDG), 2015 U.S. Dist. LEXIS 51809, at *15 (E.D.N.Y. Mar. 12, 2015), adopted by 2015 U.S. Dist. LEXIS 43819 (E.D.N.Y. Mar. 31, 2015) (finding defendants liable under N.Y. Lab. Law §§ 195(1)(a),195(3) where the plaintiffs "did not receive written notice of wage information when they were hired" and they "did not receive written notice . . . with every payment of wages").

6.   Plaintiff was not entitled to spread-of-hours pay

Plaintiff also brought a spread-of-hours claim against Defendants under the NYLL. "Under the NYLL, an employee is entitled to earn an additional hour of pay at the minimum wage for each day on which that employee works more than ten hours."  Saucedo v. On the Spot Audio Corp., No. 16 Civ. 451 (CBA) (CLP), 2016 U.S. Dist. LEXIS 177680, at *12 (E.D.N.Y. Dec. 21, 2016) (citing 12 N.Y.C.R.R. § 146-1.6(a)), adopted by 2017 U.S. Dist. LEXIS 28089 (E.D.N.Y. Feb. 28, 2017).  A limitation upon an employee's eligibility to recover for spread-of-hours is that the employee not earn more than the minimum wage.  See Guadalupe v. Tri–State Emp't, Mgmt. & Consulting, Inc., No. 10 Civ. 3840 (NG) (CLP), 2013 WL 4547242, at *12–13 (E.D.N.Y. Aug. 28, 2013) (citing to NYSDOL opinion letters stating this prerequisite).

The Court, having already determined that Plaintiff earned above the New York statutory minimum wage, finds that she was not entitled to spread-of-hours pay.

7.   Plaintiff is entitled to some liquidated damages

Prior to April 9, 2011, New York employees were entitled to recover damages in the amount of the unpaid minimum wage and overtime, plus an additional 25% of those unpaid wages as liquidated damages under the NYLL.  See N.Y. Lab. Law §§ 198(1-a), 663(1) (effective Nov. 24, 2009).  Thereafter, the WTPA increased the amount of liquidated damages recoverable under NYLL to 100% of the total unpaid wages.  See N.Y. Lab. Law §§ 198(1-a), 663(1) (effective Apr. 9, 2011); Gonzalez v. Masters Health Food Serv. Inc., No. 14 Civ. 07603 (VEC), 2017 WL 3835960, at *18 (S.D.N.Y. July 27, 2017).

An employer can avoid paying liquidated damages only if it proves it has "a good faith basis to believe that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law § 198(1–a).  Defendants' burden is a difficult one to meet.  See Reich v. Southern New

34

England Telecom. Corp., 121 F.3d 58, 71 (2d Cir.1997). "To establish good faith, the employer must take active steps to ascertain the dictates of the [law] and then act to comply with them." Herman, 172 F.3d at 142 (citing Reich, 121 F.3d 58 at 71).[12]

The Court finds that Defendants have failed to meet their burden of presenting evidence of their good faith. See Eschmann, at *9. Therefore, Plaintiff is entitled to recover liquidated damages consisting of 25% of her unpaid wages for overtime violations under the NYLL for the period of January 2010 through April 8, 2011 and 100% for the period of April 9, 2011 through April 16, 2013.

8. Plaintiff is entitled to pre-judgment interest

Under NYLL, Plaintiff can receive both liquidated damages and pre-judgment interest because they "serve fundamentally different purposes." Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999). Pre-judgment interest and liquidated damages under the NYLL are not functional equivalents. "The purpose of a prejudgment interest award . . . is to compensate a plaintiff for the loss of use of money. In contrast, liquidated damages under the [NYLL] 'constitute a penalty' to deter an employer's willful withholding of wages due." Id. (internal citations omitted). "Prejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages." Maldonado v. La Nueva Rampa, Inc., No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012).

New York courts apply the statutory interest rate of 9% per annum in determining pre-judgment interest. N.Y. C.P.L.R. § 5004. N.Y. C.P.L.R. § 5001(b) sets forth two methods of calculating pre-judgment interest. "First, interest may be calculated from 'the earliest

---

[12] Ms. Zenteno testified that she did not take any steps to ensure that her compensation practices complied with federal or state law. Dec. Tr. 41:16-42:3.

ascertainable date the cause of action existed.'  However, '[w]here . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." Gortat v. Capala Bros., 949 F. Supp. 2d 374, 382 (E.D.N.Y. 2013) (quoting N.Y. C.P.L.R. § 5001(b)).  New York law provides courts with "wide discretion in determining a reasonable date from which to award pre-judgment interest." Conway v. Icahn & Co., 16 F.3d 504, 512 (2d Cir.1994).

Here, as damages were incurred at various times (from January 2010 to April 16, 2013), the Court will employ the latter calculation method.

Accordingly, the midpoint from which this Court will begin its pre-judgment interest calculation on Plaintiff's unpaid overtime is August 25, 2011.

   9.   Plaintiff is entitled to post-judgment interest

Plaintiff is entitled to post-judgment interest pursuant to 28 U.S.C. § 1961.  See Blue v. Finest Guard Serv., Inc., 09 Civ. 133 (ARR), 2010 WL 2927398, at *13 (E.D.N.Y. June 24, 2010) (awarding post-judgment interest on an FLSA- and NYLL-based default judgment); Pereira v. J. Sister Hair Care Prods., Inc., 08 Civ. 4537 (GBD) (RLE), 2010 WL 2194808, at *4 (S.D.N.Y. Apr. 5, 2010), adopted by 2010 WL 2194807, at *4 (S.D.N.Y. June 1, 2010) (same). This amount is calculated from the date of the entry of the judgment, at a rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.  See 28 U.S.C. § 1961.  As per 28 U.S.C. §1961, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  "The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." Duffy v. Oyster Bay Indus., Inc., 10 Civ. 3205 (ADS) (ETB),

2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), adopted by 2011 WL 2259749 (E.D.N.Y.

June 2, 2011); see Begum v. Ariba Disc., Inc., 12 Civ. 6620 (DLC), 2015 WL 223780, at *8

(S.D.N.Y. Jan. 16, 2015) (awarding post-judgment interest in a FLSA and NYLL wage-and-hour

case).

Therefore, the Court finds that Plaintiff is entitled to post-judgment interest, to be

calculated from the date the Clerk of Court enters judgment in this action until the date of

payment, using the federal rate set forth in 28 U.S.C. § 1961.

### E.      Damages

Having concluded that Defendants are liable for violating the NYLL, the Court considers

whether Plaintiff has satisfied her burden of establishing the damages she claims.  It is well-

established that the party seeking damages "must prove the amount of damages by a

preponderance of the evidence."  See Solis, 938 F. Supp. 2d at 392.

In awarding damages, the Court is not limited to the relief requested in the complaint, but

rather may award any relief that it deems just and proper.  See Fed. R. Civ. P. 54(c) (directing

that aside from default judgments, "[e]very other final judgment should grant the relief to which

each party is entitled, even if the party has not demanded that relief in its pleadings"); see also

N.Y. C.P.L.R. § 3017(a) ("Except as provided in section 3215 [concerning default judgments],

the court may grant any type of relief within its jurisdiction appropriate to the proof whether or

not demanded, imposing such terms as may be just.").  The language of the statute suggests "that

the Court is not bound by the parties' pleadings in determining what relief to award plaintiff."

Sass v. MTA Bus Co., 6 F. Supp. 3d 238, 249 (E.D.N.Y. 2014); see Rocket Jewelry Box, Inc. v.

Quality Int'l Packaging, Ltd., 90 Fed. Appx. 543, 547 (Fed. Cir. 2004) ("[P]ursuant to Rule 54(c)

of the Federal Rules of Civil Procedure 'every final judgment shall grant the relief to which the

party in whose favor it is rendered is entitled, even if the party has not demanded such relief in

the party's pleadings.' Thus, whether or not [the plaintiff] had specifically requested it [in the

joint pretrial order], the district court could grant the proper relief, including prejudgment interest

and a permanent injunction." (quoting Fed. R. Civ. P. 54(c)); Pridgen v. Andresen, 113 F.3d

1230 (2d Cir.1997) (observing that the plaintiffs "correctly note that Fed. R. Civ. P. 54(c)

authorizes a court to grant full relief, even if that relief is not requested in the complaint");

Trapani v. Consol. Edison Employees' Mut. Aid Soc., Inc., 891 F.2d 48, 51 (2d Cir. 1989) ("The

fact that plaintiffs did not seek such relief is of no moment.  A plaintiff is entitled to the relief

justified by the facts proven at trial."); Gins v. Mauser Plumbing Supply Co., 148 F. 2d 974, 976

(2d Cir. 1945) ("[E]ven the demand for judgment loses its restrictive nature when the parties are

at issue, for particular legal theories of counsel yield to the court's duty to grant the relief to

which the prevailing party is entitled, whether demanded or not.").

　　　Thus, although Plaintiff failed to request Wage Notice penalties and improperly requested

$2,500 for Wage Statement penalties in her post-trial submission,[13] this Court finds that these

errors are of no moment.  Plaintiff is entitled to such relief justified by the facts proven at trial

and the applicable law.

### F.    Damages Calculations

　　　Plaintiff claims that she is entitled to $223,677.96 in damages, including: (i) $124,254.16

in unpaid overtime; (ii) $9,644.87 in unpaid spread-of-hours damages; (iii) $87,278.93 in

liquidated damages; (iv) a $2,500 penalty for failure to provide Wage Statements; and (vi) pre-

---

[13] In Plaintiff's post-trial submission, Plaintiff requested damages in the amount of $2,500 apparently in reliance on an outdated version of the NYLL.  See Pl. Supp. Br., ECF No. 53 p. 2, 4.  Plaintiff also requested damages only under N.Y. Lab. Law § 195 (3) and not also under N.Y. Lab. Law § 195 (a)(1).

judgment interest.  See Pl. Supp. Br., ECF No. 53 p. 2.  In opposition, Defendants contend that

Plaintiff is only entitled to $3,111.12 in unpaid overtime damages.  See Defs. Supp. Br., ECF No.

43, p. 3.[14]  For the reasons set forth below, the Court concludes that Plaintiff is entitled to recover

$16,535.98 in compensatory and liquidated damages, penalties, pre-judgment interest and costs,

as well as an additional amount for post-judgment interest.

       1.   Regular hourly rate

 This Court has determined that Plaintiff was paid on an hourly basis, not a weekly salary

basis, and that her hourly wage was $7.25 per hour.  Therefore, the Court finds that Plaintiff was

properly paid at a wage above the then-existing New York statutory minimum wage for her first

40 hours of work per week.

       2.   Overtime compensation

Plaintiff's overtime compensation for all hours worked beyond 40 per week should have

been paid at the premium rate of $10.875 per hour based on her regular rate of $7.25 per hour.

Thus, from January 2010 to June 30, 3012, Plaintiff worked 72 scheduled hours per

week.  Dec. Tr. 15:20-24, 16:24-17:2; 28:22-29:2.  During this period, plaintiff was paid $290

per week for her first 40 hours ($7.25 x 40 = $290) plus $320 for hours 41-72 (32 x $10 = $320).

She should have been paid $348 for hours 41-72 (32 x $10.875=$348) and was, therefore,

underpaid by $28 ($348-$320 = $28) per week.

Thereafter, from July 1, 2012 to April 16, 2013, Plaintiff worked 40 scheduled hours per

week for which she was paid $7.25 per hour, Dec. Tr. 17:3-9; 28:16-18, plus an "extra" ten hours

per week on top of her regularly scheduled hours for which she was paid $10 per hour.  She

---

[14] Defendants' Supplemental Brief directly contradicts the evidence presented by Ms. Zenteno's
testimony at trial as to the hours Plaintiff worked; therefore, this Court affords it no weight.

should have been paid $10.875 for each of these "extra" hours so she was underpaid by $8.75 (($10.875 x 10 = $108.75) – ($10 x 10 = $100) = $8.75)) per week for her "extra" hours during this period.

Plaintiff was properly compensated at her regular rate and did not work any "extra" hours for the period of April 16, 2013 to October 1, 2013.

Accordingly, the Court finds that Plaintiff is entitled to recover damages for the hours she worked in excess of 40 hours per week from January 2010 to April 16, 2013 as follows: $28 per week for the period of January 2010 to June 30, 2012 plus $8.75 per week for the period of July 1, 2012 through April 16, 2013.  There are 130 weeks from January 1, 2010 to June 30, 2012; therefore, Plaintiff is owed $3,640 (130 weeks x $28 = $3,640) of unpaid overtime pay for that period.  There are 41 weeks from July 1, 2012 through April 16, 2013; therefore, Plaintiff is owed $358.75 (41 weeks x $8.75 = $358.75) of unpaid overtime pay for that period.  Thus, the total of unpaid overtime compensation owed to Plaintiff is $3,998.75 ($3,640 + $358.75 = $3,998.75).

   3.   Wage Notice and Wage Statement violations

Plaintiff worked for Defendants between January 2010 and October 2013, a total of approximately 195 weeks.  Defendants concede that they did not provide Plaintiff with Wage Notices and Wage Statements of her pay and that Defendants failed to keep proper payroll records.  Dec. Tr. 21:25-22:2, 22:18-22, 31:3-32:1, 40:3-23.  Plaintiff worked more than 100 days for Defendants, and therefore, she is entitled to the statutory maximum of $5,000 for violations of § 195(1)(a) and $5,000 for violations of § 195(3) for a total of $10,000 for Wage Notice and Wage Statement violation penalties.  See Leon v. Chen, No. 16 Civ. 480 (KAM), 2017 U.S. Dist. LEXIS 46765, at *23 (E.D.N.Y. Mar. 29, 2017).

4.   Liquidated damages

Plaintiff is entitled to recover liquidated damages consisting of 25% of her unpaid overtime wages for overtime violations for the period of January 2010 through April 8, 2011 and 100% for the period of April 9, 2011[15] through April 16, 2013.

There are 66 weeks from January 1, 2010 to April 8, 2011; therefore, Plaintiff is owed $1,848 (66 weeks x $28 = $1,848) of unpaid overtime pay and $462 ($1,848 x 25 % = $462) in liquidated damages for that period.

There are 105 weeks from April 9, 2011 to April 16, 2013; therefore, Plaintiff is owed $918.75 (105 weeks x $8.75 = $918.75) of unpaid overtime pay and $918.75 ($918.75 x 100% = $918.75) in liquidated damages for that period.

Thus, the total of liquidated damages to which plaintiff is entitled due to unpaid overtime compensation is $1,380.75 ($462 + $918.75 = $1,380.75).

5.   Pre-judgment interest

Plaintiff is entitled pre-judgment interest at a rate of 9% per annum from January 1, 2010 to October 1, 2013 on her unpaid overtime claims.

There are 768 days between the midpoint date of August 25, 2011, and October 1, 2013. Thus, Plaintiff is owed $756.48 in pre-judgment interest on her unpaid overtime claims ((3,998.75 x 9% ÷ 365 days = $.985 per diem) x 768 days = $756.48).  Pre-judgment interest continues to accrue at a daily rate of $.985 from October 2, 2013 until judgment is entered.

---

[15]  The date on which N.Y. Lab. Law §§ 198(1-a), 663(1), as amended, became effective.

6. Post-judgment interest

Plaintiff is entitled to post-judgment interest on the amounts set forth herein.  Therefore, Defendants are ordered to pay Plaintiff post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961.

7. Attorney's fees

Plaintiff may move for an award of attorneys' fees pursuant to Fed. R. Civ. 54(d)(2) by motion.

8. Costs

The NYLL provides for an award of costs.  See N.Y. Lab. Law § 198(4).  Here, Plaintiff seeks costs in her Complaint, Compl., ECF No. 1 ¶¶ 32, 37, 42, 46, 49, 53, however, she does not provide a bill of costs or any explanation as to the costs she incurred.  The docket in this matter reflects that Plaintiff paid the filing fee of $400.  Accordingly, I award Plaintiff $400 in costs.[16]

---

[16] This finding does not preclude Plaintiff from requesting additional costs incurred as part of her motion for attorney's fees.

## V.    CONCLUSION

For the foregoing reasons, the Court concludes, after carefully considering the evidence introduced at trial, the arguments of counsel, and the controlling law on the issues presented, that Plaintiff has shown by a preponderance of the evidence that Defendants violated the overtime, Wage Notice and Wage Statement provisions of the NYLL.  The Court finds the Defendants jointly and severally liable to Plaintiff in the amount of $16,535.98, consisting of $3,998.75 of compensatory damages, $10,000 in penalties, $1,380.75 in liquidated damages, $756.48 in pre-judgment interest and $400 in costs. All of Plaintiff's other claims are denied.  The Clerk of the Court shall enter judgment accordingly, and close the case.

Dated:  Brooklyn, New York
        September 29, 2017

*Vera M. Scanlon*
_____
                 VERA M. SCANLON
         United States Magistrate Judge